UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SCOTT HALLMAN,

                       **Plaintiff,**

v.                                                    5:19-CV-516 (NAM/TWD)

OFFICE OF PERSONNEL MANAGEMENT,

                       **Defendant.**

**APPEARANCES:**

*Attorney for Plaintiff*
Martin A. Lynn
Lynn Law Firm, LLP
101 South Salina Street, Suite 750
Syracuse, NY 13202

*Attorneys for Defendant*
Ransom P. Reynolds, III
Emer M. Stack
Office of the United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

                       **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Scott Hallman brings this action under the Federal Employees Health Benefits Act ("FEHBA"), 5.U.S.C. § 8912, challenging Defendant the Office of Personnel Management's ("OPM") decision to deny insurance coverage and payment of benefits for a

1

procedure he underwent to treat prostate cancer. (Dkt. No. 20). Now before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 27, 29).[1]

## II.     BACKGROUND[2]

### A. Plaintiff's Medical Treatment

Few facts are disputed in this case. On July 28, 2015, Plaintiff was diagnosed with localized prostate cancer and informed that his treatment options were robotic prostatectomy and radiation therapy. (Dkt. Nos. 27-2, ¶¶ 3–4; 29-4, ¶¶ 3–4; OPM0362–63). When he learned that the risks of these treatments included "incontinence, impotence, bleeding, [and] infection," he did independent research and discovered MRI-guided laser ablation treatment, which involves using laser-generated heat to destroy cancer tissue. (Dkt. Nos. 27-2, ¶¶ 5, 7; 29-4, ¶¶ 5, 7; OPM0231). This led him to seek a second opinion from Dr. Dan Sperling of the Dr. Sperling Medical Center. (Dkt. Nos. 27-2, ¶ 8; 29-4, ¶ 8).

Dr. Sperling advised Plaintiff that his best treatment options were ablation and radical prostatectomy; he also noted that several studies suggested that "ablation of prostate cancer may yield long term disease-free survival," and that Plaintiff should weigh a "definitive cure vs. quality-of-life issues especially potency." (Dkt. Nos. 27-2, ¶¶ 9–10; 29-4, ¶¶ 9–10; OPM0231). Dr. Sperling also explained that the primary limitation of the ablation procedure to treat prostate cancer "is that the cancer may not be completely destroyed," requiring careful follow-up. (Dkt. Nos. 27-2, ¶ 11; 29-4, ¶ 11; OPM0231). Dr. Sperling noted that trials were ongoing to study the efficacy of the procedure. (Dkt. Nos. 27-2, ¶ 11a; 29-4, ¶ 11a; OPM0231).

---

[1] This case was reassigned to the Hon. Norman A. Mordue on June 11, 2021. (Dkt. No. 36).

[2] The facts have been drawn from the parties' Local Rule 7.1(a)(3) statements and their responses, (Dkt. Nos. 27-2, 29-4, 33-1), and the parties' attached exhibits, depositions, declarations, and the administrative record ("OPM0###"), (*see generally* Dkt. Nos. 27, 28, 29, 33, 38), to the extent that they are in admissible form.

On October 26, 2015, Plaintiff received successful MRI-guided laser ablation from Dr. Sperling. (Dkt. Nos. 27-2, ¶ 12; 29-4, ¶ 12; OPM0231–33).

### B. The Plan's Determinations

Dr. Sperling submitted claim forms for the procedure in the amount of $30,000 to Plaintiff's health insurer, Blue Cross Blue Shield ("BCBS"). (Dkt. Nos. 27-2, ¶ 13; 29-4, ¶ 13; OPM0032–35). BCBS determined that, pursuant to the terms of Plaintiff's 2015 Service Plan (the "Plan"), Dr. Sperling's services "were not medically necessary" and denied the claim. (Dkt. Nos. 27-2, ¶¶ 14–16; 29-4, ¶¶ 14–16; OPM0036–37, 209). The Plan defines medically necessity as follows:

> All benefits are subject to the definitions, limitations, and exclusions in this brochure and are payable only when we determine that the criteria for medical necessity are met. Medical necessity shall mean health care services that a physician, hospital, or other covered professional or facility provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing, or treating an illness, injury, disease, or its symptoms, and that are:
>
> (a) In accordance with generally accepted standards of medical practice in the United States;
> (b) Clinically appropriate, in terms of type, frequency, extent, site, and duration; and considered effective for patient's illness, injury, disease, or its symptoms; and
> (c) Not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results for the diagnosis or treatment of that patient's illness injury, or disease, or its symptoms; and
> (d) Not part of or associated with scholastic education or vocational training of the patient; and
> (e) In the case of inpatient care, only provided safely in the acute inpatient hospital setting.
>
> For these purposes, "generally accepted standard of medical practice" means standards that are based on credible scientific

3

> evidence published in peer-reviewed medical literature generally recognized by the relevant medical community and physician specialty society recommendations.
>
> **The fact that one of our covered physicians, hospitals, or other professional or facility providers has prescribed, recommended, or approved a service or supply does not, in itself, make it medically necessary or covered under this Plan.**

(OPM0313) (emphasis in original).

Plaintiff twice asked BCBS to reconsider its decision, and each time, after review by a medical consultant, BCBS denied coverage. (Dkt. Nos. 27-2, ¶¶ 17–27; 29-4, ¶¶ 17–27; OPM0239–42, 288–289, 294–305). The medical consultants, both physicians specializing in Radiation Oncology, separately determined that Plaintiff's ablation treatment was not medically necessary based on the current medical literature and National Comprehensive Cancer Network ("NCCN") guidelines. (Dkt. Nos. 27-2, ¶¶ 19–19a, 25–26; 29-4, ¶¶ 19–19a, 25–26; OPM0288, 304). Without coverage, Plaintiff was left responsible for the entire $30,000 owed to Dr. Sperling for the procedure. (Dkt. Nos. 27-2, ¶ 22; 29-4, ¶ 22).

### C. OPM's Determination

On March 1, 2017, Plaintiff appealed the denied claim to OPM. (Dkt. Nos. 27-2, ¶ 29; 29-4, ¶ 29; OPM0314–19). OPM's medical reviewer, who was Board Certified in Hematology and Oncology, also found that Plaintiff's ablation treatment did not meet the definition of medical necessity. (Dkt. Nos. 27-2, ¶ 31; 29-4, ¶ 31; OPM0413–15). The reviewer noted that there are ongoing trials for this treatment, its "long term efficacy and safety" is unknown, neither the NCCN nor UpToDate authors recommend it for patients with prostate cancer, and support for the procedure in medical literature is scant. (Dkt. Nos. 27-2, ¶ 32; 28-5; 29-4, ¶ 32; OPM0414–15).

OPM affirmed BCBS's decision, explaining that since the ablation treatment was "not in accordance with the generally accepted standards of medical practice in the United States," it was not medically necessary. (OPM0412). Plaintiff then commenced this action. (Dkt. No. 1).

### III.    STANDARDS OF REVIEW

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)

(citation omitted). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Upon cross-motions for summary judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the nonmoving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621–22 (2d Cir. 2008) (quoting *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007)).

### B. Reviewing Agency Decisions

On appeal of a decision by an administrative agency such as OPM, the Court's review is governed by the Administrative Procedure Act ("APA"). Under the APA, a court must uphold the agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In general, this standard of review is deferential, and a court cannot substitute its judgment for that of the agency. *See NRDC, Inc. v. United States EPA*, 961 F.3d 160, 169–70 (2d Cir 2020). The Court's review is limited to the record before OPM at the time of its decision. 5 C.F.R. § 890.107(d)(3).

### IV. DISCUSSION

Plaintiff has one claim in this case: that OPM wrongly denied him coverage for his ablation treatment. In moving for summary judgment, Defendant argues that Plaintiff's claim is

untimely because it was filed over three years after he received the treatment, and further, that OPM's decision to deny coverage was well-supported by the administrative record and rationally related to evidence showing that the ablation treatment was not medically necessary. (Dkt. No. 27-1, pp. 17, 19–22). In his opposition and cross-motion, Plaintiff argues that his claim was timely, that OPM failed to fully consider "the terms and coverages" of the Plan, that the treatment he received is widely practiced, and that OPM's decision to deny coverage was arbitrary and capricious. (Dkt. No. 29-5, pp. 6–11).

### 1. Timeliness

Upon exhausting administrative remedies, a claimant may appeal the final decision of OPM in federal court and must file suit not "later than December 31 of the 3rd year after the year in which the care or service was provided." 5 C.F.R. § 890.107(d)(2). Here, Plaintiff received ablation treatment on October 26, 2015, but he did not file a complaint in this action until April 30, 2019, which is at first glance about four months late. (Dkt. No. 27-2, ¶¶ 1, 12; 29-4, ¶¶ 1, 12). However, Plaintiff claims that he could not have possibly brought suit within three years of treatment because he did not receive OPM's final decision until March 1, 2019. (Dkt. Nos. 29-2, ¶¶ 11–20, Ex. A; 29-5, p. 6). OPM's decision letter is "dated" April 25, 2017, but it could not have been sent until sometime after May 24, 2017, the date of the cited medical reviewer's report. (*See* OPM0412–15). Given the conflicting evidence as to when Plaintiff received the letter and learned about OPM's final decision to deny his claim (thereby exhausting his administrative remedies), the Court declines to find his case time-barred and will proceed to the merits.

##### 2. Merits

First, Plaintiff argues that OPM's decision was arbitrary and capricious because it never reviewed or considered the full Plan. (Dkt. No. 29-5, pp. 8–9). However, OPM's decision shows that it specifically considered the 2015 Plan's definition of medical necessity, (OPM0412), which was the crux of Plaintiff's appeal to OPM—that his ablation procedure should be deemed medically necessary for treatment of prostate cancer. Therefore, the Court finds that OPM considered the *relevant* portion of the Plan, and the absence of the full Plan in the administrative record does not render its decision arbitrary and capricious.

Second, Plaintiff questions the reliability of OPM's medical reviewer as the basis for its decision. (Dkt. No. 29-5, pp. 8–10). However, the record shows that the medical reviewer surveyed all the materials submitted to him and cited to five ongoing trials, NCCN guidelines, and the medical resource UpToDate in support of the conclusion that Plaintiff's ablation treatment was not medically necessary because the treatment is still under investigation. (OPM0413–15). This analysis is also consistent with the decisions of the two medical consultants who reviewed Plaintiff's records and medical literature for BCBS. (OPM0288, 304). Even Dr. Sperling, who submitted a report justifying the ablation, noted that it is subject to ongoing trials and may not be completely effective in eliminating prostate cancer. (Dkt. Nos. 27-2, ¶¶ 11–11a; 29-4, ¶¶ 11–11a; OPM0231, 381–83). And notably, the procedure was not initially recommended by Plaintiff's own doctor. (Dkt. Nos. 27-2, ¶¶ 3–4; 29-4, ¶¶ 3–4; OPM0362–63). Thus, the Court finds that OPM's decision was not arbitrary and capricious in relying upon the well-supported opinion of its medical reviewer.

Plaintiff also argues that OPM's finding that focal laser ablation was not medically necessary is arbitrary and capricious because the procedure "is routinely covered" by BCBS for

treatment of prostate cancer. (Dkt. No. 29-5, p. 11). But the 2019 NCCN guidelines submitted by Plaintiff indicate that ablation may be covered as a treatment option "if radiation therapy *does not work*." (Dkt. No. 29-3, pp. 50, 73) (emphasis added). That was not the case for Plaintiff, who chose to proceed with ablation without first undergoing radiation therapy.

Finally, Plaintiff claims that ablation is FDA approved and offered to treat prostate cancer at various medical facilities around the country. (Dkt. No. 29-5, p. 10). But even if that is true, it does not negate the substantial evidence cited by OPM and its medical reviewer. Ultimately, the Court cannot reweigh the evidence, step into OPM's shoes, and decide if the treatment was medically necessary. Rather, the Court's review is narrowly limited to deciding if OPM's decision was arbitrary and capricious. And the record shows that OPM thoroughly reviewed Plaintiff's case and relied upon the well-supported opinion of its medical reviewer, which also aligned with the two opinions of the medical consultants for BCBS. After reviewing this evidence, the Court cannot conclude that OPM's decision was arbitrary and capricious in finding that the ablation was not within the generally accepted standard of care for treating prostate cancer, thus falling short of the Plan's definition of medically necessity.

The Court sympathizes with Plaintiff; nevertheless, for the foregoing reasons, the Court finds that Plaintiff cannot as a matter of law demonstrate that OPM's decision to deny his claim for ablation treatment was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *See also Nail v. United States OPM*, No. 6:17-CV-1462, 2019 WL 1117038, 2019 U.S. Dist. LEXIS 38413 (M.D. Fla. Mar. 11, 2019) (affirming OPM's denial of coverage of thermal ablation treatment for prostate cancer); *Campbell v. U.S. Off. of Personnel Mgt.*, 384 F. Supp. 2d 951, 957 (W.D. Va. 2004) (rejecting claim that OPM's decision not to cover surgical procedure was arbitrary and capricious where its decision "was based on a

thorough review of [the plaintiff's] file and the recommendation of OPM's own medical consultant").

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that the First Amended Complaint (Dkt. No. 20) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: September 29, 2021
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge